CHANCERY.

Case 35.

October 6.

Case stated.

# Hewes *vs* Preston, &c.

### ERROR TO THE LOUISVILLE CHANCERY COURT.

*Trusts and Trustees.    Cestui que trust.*

JUDGE BRECK delivered the opinion of the Court.

IN 1834, A. R. Woolley and his wife, Caroline P. Woolley, conveyed to Edward D. Hobbs and Jason Rogers, certain lots in the City of Louisville, and other real estate. The title to the estate thus conveyed, was derived through Mrs. Woolley. The conveyance vested the estate in Hobbs and Rogers, as Trustees, and upon these terms: "To have and to hold the same, with all the rents, profits and issues, growing, arising and accruing therefrom, to the said Edward D. Hobbs and Jason Rogers, upon trust, to pay the rents and profits and issues thereof, to the said Caroline, or to such person or persons as she, by writing, shall direct to receive the same, during the joint lives of the said A. R. Woolley and Caroline his wife, for her sole and separate use, so that the said A. R. Woolley shall not sell, mortgage, charge or otherwise dispose of the same, or any part thereof, with this proviso however, and upon this further trust, that in case the Trustees and the said Caroline shall, at any time, judge and agree that it is for the interest of said Caroline and advantage to the estate, that any part of the same should be sold, then and in that event, the Trustees are authorized and hereby directed, the consent of said Caroline being first given to them, in writing, to sell and convey to the purchaser or purchasers of the part so sold, the fee simple estate in such part; and this indenture is made upon trust, that they will so convey, in the event and under the circumstances aforesaid, and the proceeds of such sale, and the money arising therefrom, shall be held for the sole and separate use of said Caroline, and invested and applied in such manner as she, by writing, shall direct; and in case the said Caroline shall die in the lifetime of her said husband, then so much of the above described property as shall not have been sold and con-

veyed as aforesaid, to the use of such person or persons as the said Caroline, by her last will and testament, in writing, or by any writing in the nature of, or purporting to be her last will and testament, executed in legal form, shall direct or appoint, and in default of such testament or alienation, then the whole or such part or parts of the above described land and property, to the use of the right heirs of the said Caroline, in such manner and proportions as is directed by law."

Under the express provisions of this deed, Mrs. Woolley and her Trustees, in 1838, conveyed the estate to William C. Preston, to hold the same as Trustee, upon like uses and trusts.

In 1835, Mrs. Woolley and her Trustees leased to John H. Hewes, the plaintiff in error, for twelve years, one of the lots embraced in the deed of trust. Hewes erected five frame or wooden tenements upon the lot, and after the conveyance to Preston, as Trustee, sold the residue of his lease upon the whole lot to Mrs. Woolley, with the exception of one of the tenements, which he reserved and which he was to have rent free during the residue of the term of his lease.

As the consideration of this purchase Mrs. Woolley agreed to pay $2000, and in payment of $840 of which she and her Trustee conveyed to Hewes another trust lot in the City of Louisville; for the residue she executed two notes to Hewes, for $580 each, payable in one and two years. This purchase was made in 1839, and in 1840 Mrs. Woolley died, leaving a last will and testament, which was duly proven and admitted to record in the office of the County Court of Jefferson. Under these circumstances, his first note upon Mrs. Woolley being due and unpaid, Hewes exhibited his bill in Chancery against the Trustee, Preston, who was also a Trustee and contingently, a devisee under the will, and also appointed executor, but had not qualified as such, and the other devisees, praying a satisfaction of his debt out of the trust estate.

The defendants resisted the claim; the Chancellor dismissed the bill, and Hewes has brought the case before this Court for revision.

Hewes
*vs*
Preston, &c.

The question
made of fraud on
the part of plain-
tiff in error, in
the sale. discus-
sed and found to
be unsupported.

In opposition to the claim the defendants rely: 1st. That the claim is not, in itself, just and equitable. 2d. That the note in controversy is, in no view of the case, a charge upon Mrs. Woolley's or the trust estate, and that it cannot be subjected to its payment.

In support of the first objection, it is insisted, that the tenements erected by Hewes upon the lease-hold premises, were occupied by women of notoriously bad fame; that the inducement of Mrs. Woolley in making the purchase, was to change the tenantry and clear the lot of the obnoxious persons then in possession, and thereby remove what was regarded as a nuisance, and an injury to other estate belonging to her in the vicinity; that when the purchase was made, it was understood that Hewes would not continue or suffer the premises reserved by him to be occupied by persons of bad fame: but notwithstanding such understanding and agreement, that Hewes continued to let the same to persons of notoriously bad character, and which were known by him to be such, and by reason thereof, that the premises purchased by Mrs. Woolley were reduced in value, and finally these houses were destroyed by fire, intentionally communicated, as was supposed, to abate the nuisance thus continued upon the premises retained by Hewes.

If all these facts were established, the complainant's demand would certainly be undeserving the favorable consideration of the Chancellor: but we think the material portion of them is not sustained by the testimony.

It is not established, that in the purchase by Mrs. Woolley, it was any part of the contract, that Hewes was to remove the obnoxious persons then in possession of the premises retained by him, or that he was to control, or could control the renting of the premises thereafter. It appears that the person then in possession was the owner of the house, and also, it may be inferred, of the residue of Hewes' lease; and it seems to have been understood, at the time of Mrs. Woolley's purchase, that this woman would dispose of her interest for real estate, but afterwards she declined selling, except for cash, which it was not convenient for Mrs. Woolley to pay. It appears that Hewes exerted himself to effect her removal, but without

Hewes
*vs*
Preston, &c.

success. There is no proof that he permitted her to continue in possession, nor does it appear that he could legally dispossess her—the contrary is clearly to be inferred. Mrs. Woolley obtained possession of the premises purchased by her, some six months previous to their destruction, but who then occupied the reserved part, and how the fire was communicated, and where it commenced, does not appear. We think the defendants have failed to prove that Hewes was guilty of fraud or misrepresentation in making the sale, nor is it shown that there was any failure on his part to comply with his contract. In the absence of all testimony to the contrary, it is presumed that the consideration stipulated to be paid by Mrs. Woolley was reasonable and fair. And here it may be remarked, that it was provided in the original lease to Hewes, that he was at liberty to remove, at the expiration of his term, any buildings he might erect upon the premises, unless Mrs. Woolley should elect to take them at valuation. In view of this branch of the case, we are, therefore, of opinion that the facts of the case are insufficient to invalidate the sale to Mrs. Woolley, and to impair the equity of complainant's claim to relief. In support of this conclusion, it might be further remarked, that the defendants have not indicated any disposition for a rescission of the contract of purchase, nor have they offered to surrender the premises to the complainant, which are presumed to be still in possession of the Trustee. The purchase was made by the advice and consent of the Trustee. It is recited in the deed made to Hewes for a lot, as part of the consideration, that it was *judged and agreed* between the Trustee and Mrs. Woolley, that it was for her interest that the lot in the deed mentioned should be sold, &c.

Regarding the claim then, as we do, as a just and valid claim, we proceed to notice the important question, whether the trust estate is subject to its payment.

To what extent the separate real estate of a *feme covert* is subject in a Court of equity to her debts and liabilities ; whether her note or bond is a sufficient charge upon such estate, are questions in this Court still open for consideration ; nor do they, as we apprehend, necessarily arise

A *cestui quetrust* provides by will for the payment, by executor, of "all just debts or all just claims for which

HEWES
vs
PRESTON, &c.

my estate is le-
gally·liable,"em-
braces a debt due
by the bond of
cestui que trust,
for the purchase
of a lease-hold
estate in which
the Trustee held
the fee, tho' the
purchase was
made by cestui
que trust and
Trustee while
cestui que trust
was a feme co-
vert.,

in this case.   The power of disposition and appointment, in specified modes, is expressly given to Mrs. Woolley as we have seen in the trust deed.   Whether this should be regarded as an implied prohibition upon her from disposing or appointing, in any other than the mode designated, is a vexed question not necessary here to be examined.   We deem it only necessary to enquire whether, under the express power to dispose by last will and testament, she has not made such an appointment as subjects her estate to the debt in question.   Her will contains these provisions : 1st.   "I hereby constitute William Preston, of Louisville, the executor of this my last will and testament."   2d.   "I hereby direct and empower William Preston, his agent, heir or heirs, assignee or assigns, or executor, to sell so much of my real estate as may be sufficient to discharge all my just debts, or all claims for which my estate is legally liable, and pay such debts as soon as possible."   Did the testatrix thus intend to provide for the payment of all her just debts, or did she intend the latter clause, *"or all claims* for which my estate is legally liable," as a limitation or restriction upon the previous one, of "all my just debts?"

We should most reluctantly be forced to the conclusion that it was the intention of the testatrix that only a portion of her just debts should be paid.   That such of her debts, no matter how just, to which there were technical legal objections, she gave no authority to her Trustee to discharge.   Such a construction would certainly be no compliment to her sense of justice, but might be regarded rather as a reflection upon her honesty.   We are unwilling to believe, that in the most solemn act of her life, it was her design to make a difference between her just debts and to exclude a portion of them.   If she so directed, her estate become *legally liable for all her just debts.*   Such was her direction, and we are of opinion it was not her intention to restrict or limit it by the succeeding clause.   We should rather be inclined to the opinion, that she thereby intended to enlarge the power of the Trustee, authorizing him to sell her estate, not only for the discharge of her just debts, but of all *"claims"* *for which her estate was legally liable.*   It is not presumed

she entertained any prejudice against the debt of Hewes at the date of her will, as she was then in possession of the purchased premises, and which was before the destruction by fire. We come, therefore, to the conclusion, that under the provisions of the will, the trust estate of Mrs. Woolley is subject to the payment of the complainant's debt. Whether without the will, the estate would be subject, we have not deemed necessary to decide.

We are also of opinion, that other parties than those already before the Court are not necessary for granting the relief sought by the complainant.

Wherefore, the decree herein is reversed and the cause remanded, with directions, by appropriate decree, to subject to sale so much of the trust estate as may be necessary for the discharge of the complainant's debt, provided it shall not, in a reasonable time, be paid by the Trustee or executor.

*Loughborough & Fry* for plaintiff: *Preston* for the defendants.